IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| Chris Vomastek, Trustee Triple-Time Trust, § § § James Baird, Beneficiary, § § Barbara Baird, Insured, § §         Plaintiffs, § § v. § § AXA Equitable Life Insurance Company, § §         Defendant. § | | CASE NO. _____ JUDGE _____ |

## **PLAINTIFFS' ORIGINAL COMPLAINT**

This is an action against a life insurance company arising from its:

- Failure to notify its Insured, Policy Owner, Producing Agent or Brokerage General Agency ("BGA") that a 2013 premium billing notice for a life insurance policy was returned to sender;

- Failure to notify its Insured, Policy Owner, Producing Agent or Brokerage General Agency that the premium on the life insurance policy was due in September of 2014; and

- Failure to provide notice of the resulting lapse in coverage to its Insured, Policy Owner, Producing Agent or Brokerage General Agency when the 2014 premium was not timely paid.

### I. PARTIES

1. Plaintiff, Chris Vomastek, is a resident of Archer County, Texas and serves as the Trustee for Triple-Time Trust.

2. Plaintiff, Barbara Baird is a resident of Wichita County, Texas. Mrs. Baird is the Insured of the life insurance policy in dispute.

3. James Baird ("Jim Baird") is a resident of Parker County, Texas. Mr. Baird is the beneficiary of the life insurance policy in dispute.

4. Defendant AXA Equitable Life Insurance Company ("AXA") is a New York stock company. AXA is doing business in Texas. It may be served with process by serving its registered agent for service of process in Texas, Corporation Service Company, 211 E. 7th St., Ste. 620, Austin, Texas 78701-3218.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 as this is a dispute of citizens of different states and the matter in controversy exceeds $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the insurance agent, Richard "Dick" Bass, who produced the policy of insurance and interacted with Plaintiffs and Defendant, resides in Longview, Texas and has an office in Longview, Texas. Substantial facts giving rise to this cause occurred in the Eastern District of Texas at the office of Mr. Bass.

## III. FACTS

7. Triple-Time Trust insured the life of Barbara Baird in 2010 as part of an estate plan for the Baird family. One life insurance policy acquired was AXA Policy #110027157 ("Policy"). Barbara Baird was the Insured and Triple-Time Trust was the Owner of the Policy. Jim Baird was the beneficiary. The Policy became effective on September 13, 2010. Premiums were due annually on September 13.

8. The Policy provided for payment of $1,000,000.00 to Jim Baird upon the death of Barbara Baird. The Policy was a fifteen (15) year term policy level payment. After fifteen (15) years, the premiums could increase yearly. The Policy did not expire until Mrs. Baird reached ninety-five (95) years of age. The Policy states it was to expire on September 12, 2039.

9. The application (which was incorporated into the Policy) provided that billing notices will be sent to the Owner. AXA fully explained this process as follows:

NOTICES YOU WILL RECEIVE

> We will send you a billing notice shortly before the premium is due…If your premium is not received by its due date, your policy will lapse. You will receive a lapse notice if this happens. You must pay the amount due by the date specified in the lapse notice or your coverage will terminate without value.

10. The application on the Policy listed the address of Triple-Time Trust as 301 Baird Lane, Windthorst, Texas. The application lists the Insured's address as 217 Baird Lane, Windthorst, Texas. The Triple-Time Trust checks contained the address as 217 Baird Lane although it never moved during the relevant time period. Both addresses are in rural Texas 10-15 miles from any town and both were valid addresses during the relevant time period. Both addresses were used for other Baird related businesses or residences. There was no other business or home on Baird Lane during the relevant time period that is not connected to the Baird family. For many years, all mail for any address on Baird Lane was placed in a box nearly a mile away from the buildings. Later, all mail was picked up at the local post office by employees. Within the past few years, the postal carrier began delivering all mail to the primary business location. Neither the Insured nor the Owner of the Policy changed addresses during the relevant time period of September 2010-September 2014.

11. Independent agent Richard "Dick" Bass in Longview, Texas sold the policy to Plaintiff.

12. Premiums were timely paid after notice was mailed to the Owner at 301 Baird Lane in 2011 and 2012, without incident.

13. On or about August 14, 2013, AXA sent notice of the premium payment to 301 Baird Lane. According to AXA, the notice of payment was returned to AXA as undeliverable.

14. On September 22, 2013, (well within the grace period) Owner paid the premium and the same was cashed by AXA. Thus, the policy remained in full force and effect.

15. AXA did not notify the Owner, Insured or Mr. Bass of the undeliverable billing notice.

16. Many Independent agents such as Mr. Bass use a wholesale brokerage house or a Brokerage General Agency ("BGA"). Mr. Bass was associated with IPS Advisors, Inc. at the time the Policy originated and used National Financial Partners ("NFP") as the BGA. BGAs provide administrative assistance and other services to agents.

17. According to a statement from Sally Price, an AXA supervisor in customer service, AXA claimed it sent a lapse notice in 2013 to the BGA at its primary P.O. Box 4830 in Syracuse, NY. To date, no confirmation exists that NFP has a mailing address at the above P.O. Box location. Notwithstanding, AXA never forwarded a lapse notice to Mr. Bass.

18. Contrary to its agreement, AXA did not provide Owner any billing notice for the upcoming premium in 2014. Nor did it attempt to send a lapse notice. In fact, AXA sent nothing to any person of the upcoming premium in 2014 even though the policy was in full force and effect.

19. AXA wrongfully failed to send out a billing notice in 2014 because it claimed that after the 2013 notice was returned and a correct address could not be obtained, AXA put a "lock" on the system to indicate no further mail is to be sent out as it will only be returned.

20. While there is some evidence of an investigation by AXA, it never contacted the Insured, the Owner, or Mr. Bass. There is no evidence as of this date that AXA contacted NFP. Whatever limited work AXA did to "attempt to obtain a correct address" it was not adequate or reasonable.

21. It is standard in this industry and a customary practice to send notice of failure to pay a premium or the lapse notice to the BGA or directly to the insurance agent in addition to notifying the Insured or Owner.

22. On or about December 1, 2014 in preparing for a meeting with the Baird family, Mr. Bass and his staff learned that AXA contended that the Policy had lapsed.  Within two (2) days after learning of the lapse, Mr. Bass and the Baird family met and it was confirmed that the Owner had intended to keep such policy in full force and effect.

23. Mr. Bass immediately began to attempt reinstatement of the Policy and followed all required procedures.  AXA refused to reinstate the Policy.

24. Triple-Time Trust was prepared to pay all past premiums and any appropriate penalty to reinstate the Policy. AXA refused.

25. Insured submitted a request for reinstatement and the same was refused. The Insured has applied for life insurance with other companies and has been denied coverage.

### IV.  BREACH OF CONTRACT

26. All of the foregoing paragraphs are incorporated herein by reference.

27. Owner, Insured and AXA agreed among other things that Owner would pay the premiums per the billing notice, lapse notice and other terms of the Policy and AXA agreed that it would keep the policy in full force and effect and pay the insurance benefits to the Beneficiary upon certain proof of death.  Specifically, the parties agreed that shortly before the premium was due such notice would be sent and that Owner would thereafter pay the premium.  And, the parties agreed that AXA would send a lapse notice in the event the premium was not paid by the time of lapse.  AXA promised that the lapse notice would provide the amount that must be paid by a specified date.

28. Defendant breached its agreement/promise/contract in 2014 as it failed to send a billing notice shortly before the premium was due (September 13, 2014 was due date) and failed to send a lapse notice in the event the premium was not paid by the time of lapse.

29. As a direct result of Defendant's breach, Plaintiffs have been harmed and suffered damages as more fully described below.

## V. BREACH OF A DUTY OF GOOD FAITH AND FAIR DEALING

30. All of the foregoing paragraphs are incorporated herein by reference.

31. AXA owes a duty of good faith and fair dealing because of the unequal bargaining power and exclusive control the insurance company exercises over the right to cancel policies.

32. AXA failed to comply with its duty of good faith and fair dealing by:

   a. Not providing Mr. Bass or the NFP notice as it indicated it had done;
   b. Not properly performing its investigation or contacting the Owner, the Insured, Mr. Bass or the NFP in its investigation before it decided to "lock" the system;
   c. Not providing the Owner a billing notice shortly before the premium was due;
   d. Not providing the Owner the lapse notice; and
   e. Canceling the Policy without a reasonable basis.

33. As a proximate/producing result of Defendant's acts, omissions and/or breaches of duties, Plaintiffs have been harmed and suffered damages as more fully described below.

## VI. NEGLIGENCE

34. All of the foregoing paragraphs are incorporated herein by reference.

35. It is an industry standard for insurance companies to provide notice to the actual BGA and/or producer of the policy if a premium notice is returned to sender or a premium is not paid. Alternatively, AXA voluntarily assumed that task when it attempted to send notice in the summer of 2013.

36. AXA was negligent as follows:

   a. Not providing Mr. Bass or the NFP notice as it indicated it had done;
   b. Not properly performing its investigation or contacting the Owner, the Insured, Mr. Bass or the NFP in its investigation before it decided to "lock" the system;
   c. Not providing the Owner a billing notice shortly before the premium was due;
   d. Not providing the Owner the lapse notice; and
   e. Canceling the Policy without a reasonable basis.

37. As a proximate/producing result of Defendant's acts, omissions and/or breaches of duties, Plaintiffs have been harmed and suffered damages as more fully described below.

## VII.  DAMAGES

38. Plaintiffs are entitled to the following damages:

   a. The face value of the Policy;
   b. Value of the costs to replace the policy wrongfully terminated;
   c. Incidental damages as determined to be reasonable by the trier of fact;
   d. Reinstatement of the Policy (alternatively asserted);
   e. Attorney fees, costs and expense in the amount the finder of fact determines is fair and reasonable; and
   f. Exemplary damages in the amount the trier of fact determines to be fair for breach of the duty of good faith and fair dealing to the extent such conduct rises to the standard of improper conduct.

## PRAYER

**WHEREFORE**, Plaintiffs pray that they recover from Defendant as pled above; recover costs, prejudgment and post-judgment interest on the above sums at the highest rate allowed by law; and such other and further relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Kelly Tidwell*
Kelly B. Tidwell
TX Bar No. 20020580
Geoffrey Culbertson
TX Bar No. 24045732
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Blvd.
Texarkana, Texas  75503
(903) 792-5859
(903) 792-8233 (FAX)
kbt@texarkanalaw.com
gpc@texarkanalaw.com

ATTORNEYS FOR PLAINTIFFS