**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| CHRIS VOMASTEK, TRUSTEE TRIPLE-TIME TRUST, JAMES BAIRD, BENFICIARY, BARBARA BAIRD, INSURED, | § § § § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | CASE NO. 5:15-cv-50-JRG |
| v. | § | |
| | § | |
| AXA EQUITABLE LIFE INSURANCE COMPANY, | § § | |
| | § | |
| *Defendant.* | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is the Motion to Dismiss and/or Transfer Venue Pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a) filed by Defendant AXA Equitable Life Insurance Company ("AXA"). ("Mot.," Dkt. No. 7.) For the reasons set forth below, the Motion to Dismiss is **DENIED** and the Motion to Transfer is **DENIED**.

## I.  BACKGROUND

In their complaint filed on May 22, 2015, Plaintiffs Chris Vomastek (trustee of the Triple-Time Trust), James Baird (beneficiary of the Policy), and Barbara Baird (the insured) (collectively, "Plaintiffs" or "Vomastek") raise a dispute over the cancellation of a life insurance policy due to nonpayment of premiums. Plaintiffs bring claims of breach of contract between the parties, breach of a duty of good faith and fair dealing, and negligence by Defendant AXA Equitable Life Insurance Company. (Dkt. No. 1.) Plaintiffs allege that AXA's liability arises from its (1) failure to notify its Insured, Policy Owner, Producing Agent and/or Brokerage

General Agency ("BGA") that a 2013 premium billing notice for a life insurance policy was returned to sender; (2) failure to notify its Insured, Policy Owner, Producing Agent and/or BGA that the premium on the life insurance policy was due in September of 2014; and (3) failure to provide notice of the resulting lapse in coverage to its Insured, Policy Owner, Producing Agent and/or BGA when the 2014 premium was not timely paid. (*Id.*) Plaintiffs base venue in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2) on the ground that a substantial part of the events or omissions giving rise to the claim occurred in the office of Richard Bass, the agent, in Longview, Texas.

Defendant AXA, the issuer of the Policy, is a Delaware corporation with its principal office and place of business in New York. AXA seeks to dismiss the case under 28 U.S.C. § 1406(a) for improper venue. Alternatively, AXA moves to transfer the case to the Northern District of Texas, Wichita Falls Division under 28 U.S.C. § 1404(a). (Mot. at 1–3.) AXA alleges that the proposed transferee venue is clearly more convenient because all facts giving rise to Plaintiffs' claims occurred in the Northern District of Texas. (*Id.* at 2.) AXA further alleges that venue is not proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claim did not occur in the Eastern District of Texas. (*Id.* at 2.)

Plaintiffs argue that the facts giving rise to the action occurred in the Northern District of Texas, the Eastern District of Texas, and out of state (primarily Charlotte, North Carolina). Defendants further argue that there are documents and witnesses in all three venues. ("Resp.," Dkt. No. 8, at 1–2.) Plaintiff Chris Vomastek, the Trustee of the Trust and the Policy owner, is a resident of Archer County, Texas. (Complaint ¶ 1.) Plaintiff Baird, the insured, is a resident of Wichita County, Texas. (Complaint ¶ 2.). Plaintiff James Baird, the beneficiary of the Policy, is a resident of Parker County, Texas. (Complaint ¶ 3.)

## II.    PROPRIETY OF VENUE

Defendant first argues that this case should be dismissed for improper venue under 28 U.S.C. § 1406.

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action brought in an improper venue. If the Court finds that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. When an objection to venue is raised, the burden is on the plaintiff to establish that the district he chose is a proper venue. *Knapper v. Safety Kleen Sys., Inc.*, No. 9:08-CV 84, 2009 WL 909479, at *3 (E.D. Tex. April 3, 2009); *Principal Tech. Eng'g, Inc. v. SMI Cos.*, No. 4:09-cv-316, 2009 WL 4730609 (E.D. Tex. Dec. 8, 2009). When jurisdiction is based upon diversity of citizenship, and when no specific statute provides for venue, proper venue is determined under 28 U.S.C. § 1391(b).[1]

A court may decide whether venue is proper based upon "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laport*, 536 F.3d 439, 449 (5th Cir. 2008)).

### B.    Analysis

Vomastek claims that venue is proper in this District pursuant to 28 U.S.C. § 1391 because the insurance agent, Richard "Dick" Bass, who produced the policy of insurance and directly interacted with both Plaintiffs and Defendant, resides in Longview, Texas and has an

---

[1] This Court has diversity jurisdiction over this lawsuit because the parties are citizens of different states, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

office in Longview, Texas. ("Am. Compl.," Dkt. No. 3 at 2.) Vomastek asserts that substantial facts giving rise to this litigation occurred in the Eastern District of Texas at Mr. Bass's Longview office. (*Id.*) Indeed, Vomastek asserts that Mr. Bass's *primary* office is located in Longview, and that is where Mr. Bass managed the Policy, the related file, and reviews of the policy. (Dkt. No. 8-2, "Bass Decl." ¶¶ 1, 3.) These responsibilities included numerous phone calls and substantial work that all occurred within this District. (*Id.*)

Defendant disagrees, arguing that there is no basis for venue in the Eastern District of Texas under § 1391 because the material events that led to the issuance and lapse of the Policy occurred in or around Wichita Falls, Texas in the Northern District of Texas. (Mot. at 5.)

Additionally, Plaintiff argues that venue is proper in this District under § 1391(b)(1) because (1) Defendant is subject to personal jurisdiction in this District; and (2) Defendant waived its right to contest personal jurisdiction, it is deemed to reside in this District, and venue is proper under § 1391(b)(1). (Resp. at 2–3.)

Defendant is a corporation, and for venue purposes, a corporation is deemed to reside in any district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c); *Int'l Software Sys. v. Amplicon, Inc.*, 77 F.3d 112, 114 n. 2 (5th Cir. 1996). In a multi-district state like Texas, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. 1391(c); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312–13 (5th Cir. 2008). Here, Defendant is subject to the personal jurisdiction of this Court because Defendant failed to bring a Rule 12(b)(2) challenge to personal jurisdiction in its Rule 12(b)(3) challenge to improper venue. When Defendant failed to bring a Rule 12(b)(2) challenge to personal jurisdiction with its Rule 12(b)(3) challenge to improper venue, Defendant waived its right to challenge improper venue

because venue was established in this District under 28 U.S.C. § 1391(b)(1). *Principal Tech.*, 2009 WL 4730609, at *2 (citing *Knapper*, 2009 WL 909479, at *3 (because defendant waived personal jurisdiction defense, it resided in the district and venue was proper)). Therefore, because Defendant is subject to personal jurisdiction in the Eastern District of Texas, it is deemed to reside here, and venue is proper.

Even assuming Defendant has not waived a defense based on personal jurisdiction, it may still be subject to venue in this District under section 1391(b)(2). Proper venue for an action based on diversity jurisdiction lies in any venue in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claim may have occurred in more than one district, making venue proper in each district. *Principal Tech.*, 2009 WL 4730609 at *3 (citing *Texas Marine & Brokerage, Inc. v. Euton*, 120 F.Supp. 2d 611, 612 (E.D. Tex. 2000)). Venue is proper "in a given district as long as substantial activities took place in that district, even if the activities in another district happen to be more substantial, or even the most substantial." *Texas Marine*, 120 F.Supp. 2d at 612 (citations omitted); *Principal Tech.*, 2009 WL 4730609 at *3. The issue here is whether substantial events giving rise to this lawsuit occurred in the Eastern District of Texas, not whether this District is the "best venue for [P]laintiff's lawsuit." *Principal Tech.*, 2009 WL 4730609 at *3 (citing *KMR Capital*, 2006 WL 4007922 at *5).

Here, the pleadings, supported by sworn declarations, show that the contract for the Policy was administered by Mr. Bass from his office in Longview, Texas. Such administration included management of the Policy, the related file, and reviews of the policy. (Bass Decl. at ¶ 3.) Additionally, many phone calls and other relevant work occurred in this District. *See* (*Id.*). In contrast, not many events occurred in Wichita Falls other than the execution of the Policy.

Plaintiffs specifically allege in their Complaint that agent Mr. Bass should have been provided more adequate notice and that failure to do so was a breach of the Defendant's duty of good faith, fair dealing, and negligence. (Am. Compl. at ¶¶ 32, 35, 36.) Mr. Bass declared that Defendant was advised in 2012 to send all communications regarding the Policy to his Longview office, and that Defendant should have sent notice to his Longview office of its intent to terminate before it was too late. (Resp. at 4.) Accordingly, the Court finds that substantial events giving rise to Plaintiffs' claims occurred within this District and venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2). This is true even if Defendant had not submitted itself to venue here by failing to assert (and thereby waiving) a personal jurisdiction defense. Accordingly, and for all the reasons set forth above, Defendant's request that the Court dismiss this case for improper venue is **DENIED**.

## III.    TRANSFER

Having failed to establish that venue in the Eastern District of Texas is improper, Defendant urges the Court in the alternative to transfer the case to the Northern District of California under 28 U.S.C. § 1404(a).

### A.    Legal Standard

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Thus, the first inquiry when analyzing a transfer under section 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter *In re Volkswagen I*).

Once that threshold inquiry is met, the district court must then consider the convenience

of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009). The party seeking transfer must show good cause, which means that the moving party must demonstrate that the proposed transferee venue is "clearly more convenient than the venue chosen by the plaintiff[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *In re Volkswagen II*). A convenience determination consists of balancing the convenience and inconvenience resulting from plaintiff's choice of venue in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Id.* The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314–15 & n.10. Rather, the weight to be afforded to the plaintiff's choice of venue is reflected in the moving party's substantial burden of proving that the proposed venue is "clearly

more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

**B.    Analysis**

**1.    Proper Venue**

The Parties do not dispute that the Northern District of Texas is a proper venue for this case. (Mot. at 7; Resp. at 4.)

**2.    Private Interest Factors**

The Parties both agree that non-party Richard Bass, the agent on the policy, will provide relevant evidence and testimony in this case. (Mot. at 8; Resp. at 5.) Richard Bass was affiliated with the Dallas-based Agency at the time the Policy was sold, continued to service the Policy in the Wichita Falls Division even after moving to Longview, and still maintains a Dallas office. (Mot. at 9.) However, the parties do not agree on the remaining private interest factors. The Court therefore analyzes each private interest factor in turn below.

**a.    Relative Ease of Access to Sources of Proof**

The first of the private interest factors to be considered is the relative ease of access to sources of proof. Despite important technological advances that have undoubtedly lightened the relative inconvenience of transporting large amounts of (digitized as opposed to hard-copies of) documents across the country, this factor must still be considered in the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

This factor will turn upon which party—usually the accused defendant—will probably have the greater volume of documents relevant to the litigation and the presumed location of these documents in relation to the proposed and transferor venues. *See, e.g.*, *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

As to physical evidence or other documents, Defendants do not argue that there are documents that would be more relevant to the transfer analysis near the Northern District of Texas than there are in the Eastern District of Texas. (Mot. at 7–9, Reply at 1–2.)

In contrast, Plaintiffs argue that the agent, Mr. Bass, has his primary office in Longview and that the files are maintained in his Longview office, which is in the Eastern District. (Resp. at 5.) While Plaintiffs acknowledge that the trustee would have documents relevant to the policy in the Northern District, they contend that there is no evidence that there are more documents in the Wichita Falls Division that would need to be transported to trial than there are files already located in the Eastern District. (*Id.*) Further, Plaintiffs argue that relevant files will be in AXA's National Operations Center located in Charlotte, North Carolina, and that those documents are closer to the Eastern District than the Northern District. (*Id.*) Indeed, Plaintiffs have only identified physical documents located in Longview (in the Eastern District of Texas) and in Charlotte, North Carolina (which is marginally closer to the Eastern District of Texas than it is to the Northern District of Texas). Further, neither party has shown that some or all of the relevant documents are not in digital form which would render them readily moveable around the nation at the push of a button.

Considering the location of documents in relation to the proposed and transferor venues, AXA has not shown that this factor weighs in favor of transfer. The Court finds that this factor is neutral.

### b.    Availability of Compulsory Process to Secure the Attendance of Witnesses

The Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Texarkana if he or she "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). The Court also may command a person to attend a deposition at a location "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses normally do not require compulsory process.

AXA argues that this factor favors transfer because the majority of the party and nonparty witnesses are located within the Northern District of Texas or within subpoena range of the Wichita Falls Division and that they are outside the subpoena power of the Eastern District of Texas, Texarkana Division. (Mot. at 7.) Specifically, AXA contends that post office employees in the Windthorst, Texas post office will provide relevant testimony considering Plaintiff's allegations that the address given for the Policy was valid and that a procedure for the delivery of mail to that address had been worked out with the Windthorst post office over the years. AXA argues that these potential witnesses in Windthorst would be outside the subpoena range of this Court, and if the trial were to take place in this Court, these witnesses would have to travel over two hundred miles. (Mot. at 8.) AXA does acknowledge that Mr. Bass maintains his primary office in Longview and would likely find Texarkana more convenient than Wichita Falls. (Mot. at 9.)

Plaintiffs argue that Defendants fail to name any specific Windthorst, Texas post office employees whose testimony might be relevant. Plaintiffs further argue that any testimony of Windthorst post office employees would be tangentially related to the case at best, because it is undisputed that the premium notice in 2013 for payment of premiums was not delivered by mail

to the owner, but was instead returned to AXA. (Resp. at 6.) Plaintiff further argues that whatever happened in the Windthorst post office in 2013 is not critical because it is alleged that Defendant did not send out the premium notice in 2014. Further, Plaintiff points out that, even if such postal workers were required to testify in the Eastern District, this Court has the ability to subpoena such nonparty witnesses who reside in the State of Texas so long as the party does not incur substantial expense. (Resp. at 7.)

The Eastern District of Texas and Northern District of Texas both have subpoena power over Richard Bass and the Windthorst post office employees if they are commanded to attend the trial. The parties' statements suggest that it is more likely that the most relevant third-party testimony regarding the purchase and maintenance of the Policy will be from Mr. Bass,[2] who is based in Longview. The Court questions the significance of any testimony from third-party witnesses from the Windthorst post office regarding the mail delivery and finds that it is not likely to be as relevant to the disposition of the case as Mr. Bass's testimony regarding his actions as the policy agent. Further, Defendant's generic assertion of "post office employees" fails to inform the Court adequately, especially when there is no identification adequate to show that the employees who were there in 2013 are still employed there and available. The burden to adequately inform the Court beyond generic assertions rests upon the moving Defendant.

Considering the locations of witnesses, including potential third party witnesses, AXA has not proven that this factor clearly favors transfer. The Court finds that this factor weighs against transfer.

---

[2] It is unclear whether Richard Bass would be a willing witness. Mr. Bass submitted a declaration in support of Vomastek's response to this Motion and states that he resides in Longview, Texas and has a primary office in Longview. (Dkt. No. 8-1, "R. Bass Decl.") However, Mr. Bass did not make any representation as to his willingness to attend. While the opportunity to address his willingness to appear in the Northern District of Texas was clearly open and available, Mr. Bass did not make any such representation. For the purposes of this analysis, and without a clear representation of willingness to attend, the Court must assume that Mr. Bass is an unwilling witness, as he is not a party in this case.

            **c.**        **Cost of Attendance for Willing Witnesses**

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d at 1342. In assessing this factor, the Court considers the convenience of both party and non-party witnesses. The convenience of non-party witnesses carries the greater weight in the analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 (3d ed. 2012). "A district court should [also] assess the relevance and materiality of the information the witness may provide" but should not require the movant to show "that the potential witness has more than relevant and material information . . . ." *In re Genentech*, 566 at 1343–44.

The Fifth Circuit has adopted a "100-mile rule" to focus the analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* When applying the 100-mile rule, the threshold question is whether the transferor and proposed venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of the identified material and relevant witnesses and the transferor and proposed venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average distance from the witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

AXA argues that there is a concentration of fact witnesses in the Northern District of Texas, including Plaintiffs Chris Vomastek, Barbara Baird, and James Baird. (Mot. at 8.) AXA

also points to the Dallas-based IPS Advisors, Inc. ("Agency (Dallas)") as the agency with which Richard Bass was affiliated at the time the policy was sold. (Mot. at 8–9; Reply at 5.)

Vomastek argues that there is no concentration of fact witnesses in the Northern District of Texas, but that AXA employees who were in the Charlotte, North Carolina Operations Center have specific knowledge about relevant facts and are therefore relevant fact witnesses. (Resp. at 8.) Specifically, AXA employees who worked in the call center, reinstatements department, policy service department, customer service department, and billing department would provide testimony on the procedures and protocols that affected this Policy. *See* (Resp. at 8). Vomastek further argues that, although AXA points to IPS Advisors as the agency with which Mr. Bass was affiliated when the policy was sold, Mr. Bass left IPS Advisors in 2012. By 2012, the policy was in full force and effect, and no facts occurred in 2012 that would impact any of the claims in this suit. Vomastek also argues that Defendants do not provide any names of any witnesses currently at IPS nor what knowledge such witnesses might have. (Resp. at 10.)

The Court finds that this factor weighs against transfer. Vomastek has identified willing witnesses in North Carolina who will testify to the policies of AXA that are relevant to the claims here. Vomastek has further identified the plaintiffs in this case, Chris Vomastek, Barbara Baird, and James Baird, as being willing witnesses—they have all represented that they are agreeable to travel to Texarkana to give testimony or to appear at trial. (Dkt. No. 8-5 ("J. Baird Decl."); Dkt. No. 8-6 ("C. Vomastek Decl."); Dkt. No. 8-7 ("B. Baird Decl.")) AXA points to IPS Advisors, Mr. Bass's former agency, as a potential source of willing witnesses, but the Court finds this argument unavailing. It is unlikely that any evidence from IPS Advisors will be relevant to the determination of these claims, as the Policy had already been established at the time Richard Bass left IPS Advisors. Indeed, since Mr. Bass left IPS Advisors in 2012, IPS

Advisors is unlikely to provide willing witnesses. Richard Bass is a relevant third-party fact witness, as both parties have agreed. As stated above, he has not been shown to be a willing witness. He is within 100 miles of Texarkana but far beyond 100 miles from Wichita Falls.[3]

Considering the locations of both willing and non-willing witnesses, the Court finds this important factor disfavors transfer.

### d.      Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor of or against transfer. *See In re Volkswagen*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (hereinafter *In re Volkswagen III*).

At the time AXA filed this Motion, there were no similar cases pending in either the Northern District of Texas or the Eastern District of Texas. The Court finds that this factor is neutral.

### 3.      Public Interest Factors

### a.      Administrative Difficulties Flowing from Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative and, on its own, should not outweigh other factors. *Id.*

AXA argues that this factor favors transfer because the Northern District of Texas has fewer "administrative difficulties" in handling the case—though it does not elaborate on what those administrative difficulties are—and that the median time from filing to disposition is slightly longer in the Eastern District than the Northern District. (Mot. at 10.)

---

[3] *See* www.distancebetweencities.com. Texarkana to Longview is 88 miles by car and 76 miles by plane. Longview to Wichita Falls is 266 miles by car and 239 miles by plane. *Id.*

In response, Vomastek argues that Defendant offered no evidence concerning the caseload for the Texarkana Division of the Eastern District of Texas versus the Wichita Division of the Northern District of Texas. (Resp. at 11.) Vomastek further argues that the median time from filing to trial for civil trials is 21.9 months in the Eastern District and 21.4 months in the Northern District, not even a full month difference. (*Id.*) In addition, Vomastek argues, there is are more old cases in the Northern District: there are 953 civil cases in the Northern District that are over three years old, compared to only 251 such cases in the Eastern District.

The Court finds that this factor is neutral.

### b. Local Interest in Having Localized Interests Decided at Home

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the proposed and transferor venues. *See In re Volkswagen I*, 371 F.3d at 206.

AXA argues that this factor favors transfer because the controversy arises from an insurance policy applied for, issued, and delivered in the Northern District of Texas, and the mailing or non-mailing of premium notices occurred in the Northern District of Texas. (Mot. at 9.)

In response, Vomastek argues that the agent who wrote the Policy resides in the Eastern District and has his primary office in this District. (Resp. at 10.) He did substantial work relating to this policy in the Eastern District, and AXA was further instructed to provide notice to the agent to his office in Longview in the Eastern District.

While the Policy relates to individuals living in the Northern District of Texas, the agent who was most involved in the maintenance of the policy remains based in this District. While the

- 15 -

Court not persuaded that the competing levels of community interest between the districts are not greatly different, the Court finds on balance that this factor favors transfer.

> ### c.     Familiarity of the Forum with the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflicts of Laws

AXA makes no argument about the remaining public interest factors. (Mot. at 9–10.) Vomastek argues that, because Defendant makes no argument to consider other public factors, the remaining public interest factors are neutral. (Resp. at 11.) The Court finds that such factors are neutral.

### 4.     The Balance of Factors Weighs Against Transfer

After weighing all of the evidence, the Court finds that transfer is not clearly more convenient and that this case should remain in the Eastern District of Texas. A motion to transfer venue should only be granted if the moving party can show that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d at 1197; *In re Genentech*, 566 F.3d at 1342. Two factors weigh against transfer, one factor weighs in favor, and five factors are neutral. AXA failed to meet its burden of proving that the Northern District of Texas is *clearly* more convenient than the Eastern District of Texas.

## IV.     CONCLUSION

For the reasons set forth above, AXA's Motion to Dismiss and/or Transfer to the Northern District of California (Dkt. No. 7) is **DENIED**.

**So Ordered this**

**Feb 16, 2016**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE